**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-cr-00354-APM** |
| | : | |
| **THOMAS B. ADAMS, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**STATEMENT OF FACTS FOR STIPULATED TRIAL**

The parties, by their undersigned counsel, hereby submit this Statement of Facts for the Stipulated Trial.

I.      **ELEMENTS**

**COUNT ONE**

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of Title 18, United States Code, Section 1512(c)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following

beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

## COUNT TWO

The essential elements of the offense of entering or remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. The defendant did so knowingly.

2

II.   **STATEMENT OF OFFENSE**

If the case proceeded to trial, the defendant agrees the government would have elicited the following evidence:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

***Thomas B. Adams, Jr.'s Participation in the January 6, 2021, Capitol Riot***

8.      On January 6, 2021, Adams passed through a security perimeter on the west side of the Capitol Building, and, as seen in Image 1 within a yellow box, Adams joined rioters ascending the Upper West Terrace stairs at approximately 2:26 p.m.



Image 1

9.      At approximately 2:48 pm, Adams was among the rioters who entered the Capitol Building through the Parliamentarian Door, which is a fire door.  Adams in seen in Images 2 and 3 just outside the Parliamentarian's office. On February 4, 2021, Adams told the FBI that other people had breached the door with "window washing equipment." He also stated that he walked

into the Capitol building over broken glass, and that one of the doors through which he entered had a broken window.



Image 2



Image 3

10.    After entering, Adams, as seen in Image 4, ignored and walked past a line of U.S.

Capitol Police just beyond the Parliamentarian Door who were attempting to stop the rioters.



Image 4

11.     Once Adams made his way past the line of officers, he made his way to the Senate

Chamber by walking by Vice President Pence's ceremonial office, as seen in Image 5.



Image 5

12.     At approximately 3:04 p.m., Adams entered the Senate Chamber through a door on

the second floor, as seen in Image 6. Adams knew that he did not have authorization to enter the

Senate Chamber.



Image 6

13.    Adams walked into to the Senate well, where he and multiple other rioters walked among the Senators' desks, as seen in Images 7 and 8.



Image 7



Image 8

14.    While on the Senate floor, Adams took Images 9 and 10, among others, with his cellphone.



Image 9



Image 10

15.     At approximately 3:11 pm, law enforcement escorted Adams out of the Capitol Building via the Senate Carriage Door, as seen in Image 11. Adams described this to the FBI as being "forced out."



Image 11

16.     After being removed from the Capitol, Adams told a reporter that he had traveled from Springfield, Illinois, for the rally President Trump had held earlier in the day, and had been spurred on by President Trump's claim that he had been cheated out of victory.

17.     On February 4, 2021, Adams told the FBI that it was his intent to peacefully occupy the Capitol building. He stated, in substance, "We [referring to himself and Roy Nelson Franklin, with whom he traveled to Washington, D.C.] did not have a specific plan and grabbed a couple bags of clothes and a tent. The only preparation we were concerned about was potentially being outside for a while. Since we were planning to occupy, we didn't know if they were going to be out there for one day, five days, or a week." Additionally, he stated that he did not want a "pedophile" running this country. He further explained that while he was inside the Capitol and observed how many people were present, he thought to himself, "What are they going to do if half

a million people are here and standing inside of a building and want to be heard?" He stated that

he believed the situation inside the Capitol escalated because "some people are just ignorant."

Without waiving any arguments set forth in Mr. Adams' Motion to Dismiss Count 1, the parties

agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would

establish each and every element of the charged offenses in light of the Court's ruling on the Motion and

without waiving defendant's objection to the Court's ruling.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  CAROLINA NEVIN
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
NY Bar No. 5226121
(202) 803-1612
Carolina.Nevin@usdoj.gov

JAMES D. PETERSON
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Diane Shrewsbury. I fully understand this proffer, and I accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 1/30/23

Thomas B. Adams, Jr.
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Facts with my client, ~~Christopher Patrick~~ Thomas B. Adams, and fully discussed it with my client.

Date: 1/30/23

Diane Shrewsbury
Attorney for Defendant Thomas B. Adams, Jr.

13