UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 1:21-cr-00354-APM-1 |
| | : | |
| THOMAS B. ADAMS, JR., | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT RESPONSE TO SHOW CAUSE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response to the Court's February 3, 2023, Show Cause order and requests that the Court take no action to vacate the convictions entered by the Court on January 30, 2023.

Background

By way of brief background, on January 30, 2023, the Court held a stipulated trial, at the conclusion of which it found the defendant guilty of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (1/30/23 Transcript (Tr.) 40 (Attachment A)). Before reaching that conclusion, the Court placed the defendant under oath and asked a series of questions designed to satisfy the Court that the defendant understood the terms of the stipulated trial and the rights he was giving up by proceeding in that fashion (*id.* at 12-13). Among other things, the Court confirmed that the defendant understood the elements of the charges at issue in the stipulated trial (*id.* at 17-20), confirmed that the defendant had reviewed the Statement of Facts and agreed that it contained facts that he had "either admitted to . . . [or] agreed that the government could prove beyond a reasonable doubt" (*id.* at 30), and that the Statement of Facts "fairly and accurately

describe[d] the conduct that [wa]s the basis for the stipulate trial" (*id.*). The Court discussed many of those facts with the defendant, and he admitted to their truth (*id*. at 30-32). He subsequently confirmed that they were true and accurate to the best of his knowledge (*id*. at 39). The defendant acknowledged his understanding that "this evidence would establish each and every element of the charged offenses" (*id.* at 33). Based on its comprehensive colloquy with the defendant, the Court was satisfied that the defendant had knowingly and intelligently waived his rights to a jury trial, to cross-examine witnesses, and to testify on his own behalf, and that he had agreed to the stipulated facts knowingly and intelligently (*id*. at 40). The Court thus found the defendant guilty of the two charges discussed above (*id.*).

Two days later, on February 1, 2023, The State Journal-Register ran an article entitled, "'I Wouldn't Change Anything I Did,' Springfield Man Convicted in Breach of U.S. Capitol," *available at* https://www.sj-r.com/story/news/crime/2023/02/01/thomas-b-adams-jr-was-convicted-for-breaching-u-s-capitol-on-jan-6/69863729007/. That article reported the defendant as saying, among other things: "I wouldn't change anything I did. . . . I didn't do anything. I still to this day, even though I had to admit guilt (in the stipulation), don't feel like I did what the charge is." The defendant is reported to have admitted, "I did go there. I was in the building. I didn't refuse to leave because no one ever told me specifically to get out. I was never asked to get out until a group of officers came on the Senate floor and told everybody in there it was time to go. We all lined up and walked out." And he is said to have claimed, "I had no criminal intent. I had no malicious intent. I took no weapons except the pocketknives I carry with me on a daily basis. I had no desire to do anything malicious, vicious or anything."

On February 3, this Court issued a minute order requiring the parties to show cause "why the court should not vacate Defendant's convictions of guilt in light of his post-stipulated trial

statements reported" in the article. *See* 2/3/23 Minute Order.

Argument

The government is unaware of any legal basis upon which the Court may vacate the defendant's convictions *sua sponte* based upon statements he made following those convictions. Indeed, the law appears to be to the contrary. Here, the defendant stood trial—albeit a stipulated one—and the court found the defendant guilty on two counts. Were the Court to vacate the defendant's convictions, it would effectively be granting him a new trial. But the Court has no authority to grant a new trial *sua sponte*; it may be done only on the defendant's motion. *See* Fed. R. Crim. P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment."); *id.* advisory committee notes on 1966 amendments ("The amendments to the first two sentences make it clear that a judge has no power to order a new trial on his own motion, that he can act only in response to a motion timely made by a defendant. Problems of double jeopardy arise when the court acts on its own motion."); *United States v. Green*, 414 F.2d 1174, 1175 (D.C. Cir. 1969) (noting that the trial court did not have authority to order a new trial *sua sponte*).

The fact that the Court engaged in a lengthy colloquy with the defendant before finding him guilty does not serve to transform a stipulated trial into a guilty plea. Indeed, one significant benefit to the defendant of the stipulated trial was to allow him to preserve his right to appeal and other rights he would have waived through a guilty plea (*see* 1/30/23 Tr. 36-37 (confirming defendant's understanding that he was preserving his appellate rights)). But even if the Court were to analogize this proceeding to a guilty plea, it would not have the authority to vacate the defendant's plea *sua sponte*, as numerous courts have recognized. *See, e.g.*, *United States v.*

*Patterson*, 381 F.3d 859, 865 (9th Cir. 2004) ("[A]lthough the district court is free to reject the plea agreement after accepting a guilty plea, it is not free to vacate the plea either on the government's motion or *sua sponte*. . . . The court's postponement of the sentencing decision did not postpone the decision to accept the plea. The district court did not have authority to vacate the plea over Patterson's objections."); *Ellis v. United States District Court*, 356 F.3d 1198, 1212 (9th Cir. 2004) (en banc) (Kozinski, J., concurring) ("[T]he question presented is narrow: Does a district court have sua sponte authority to vacate a previously entered and accepted guilty plea? The dissent points to nothing that confers such authority on district courts—not in the Federal Rules of Criminal Procedure, not anywhere else. . . . Conspicuously absent from these comprehensive procedures is anything authorizing the district court to vacate a properly accepted guilty plea without defendant's consent."); *United States v. Cannon*, 807 F.2d 1528, 1529 (11th Cir. 1986) (explaining that the Rules of Criminal Procedure "permit[ ] the withdrawal of a guilty plea only upon the initiative of the defendant. The district court therefore lacked the authority to vacate Cannon's guilty plea.").

Finally, even assuming the Court possessed authority to vacate the defendant's convictions *sua sponte*, it should not do so here. Defendants routinely plead guilty and subsequently deny culpability. Under those circumstances, the appropriate response is to deny the defendant credit at sentencing for acceptance of responsibility, not to vacate the defendant's convictions. *See, e.g.*, *Jeffries v. United States*, 721 F.3d 1008, 1011 (8th Cir. 2013) ("The district court concluded that since his guilty plea, Jeffries had 'denied his culpability for the crime to which he pled guilty,' and had 'failed to demonstrate . . . his intent for acceptance of responsibility.' The court pointed to the inconsistencies between the factual basis set forth in Jeffries's plea agreement and his letters to the court and to the probation office."); *United States v. Lewis*, 444 F. App'x 882, 886 (6th Cir. 2011)

(affirming district court's denial of credit for acceptance of responsibility where, "although Johnson pleaded guilty, he subsequently sought to downplay his culpability; claimed that he pleaded guilty to benefit his friends; and felt that he would not receive a fair trial"); *United States v. Hernandez*, 378 F. App'x 145, 151 (3d Cir. 2010) ("[G]iven the conflicting statements made by Hernandez, one cannot readily conclude that, despite the fact that he did not *move* to withdraw his guilty plea to Count I, Hernandez has accepted responsibility"); *United States v. Zamora*, 26 F. App'x 552, 554 (7th Cir. 2001) ("A defendant who pleads guilty is not entitled to an adjustment for acceptance of responsibility as a matter of right. . . . Rather, the defendant bears the burden of demonstrating to the district court that she accepts moral responsibility for her offense and is entitled to a reduction.").

Indeed, generally speaking, a general claim of innocence is insufficient to support a defendant's own motion to withdraw his guilty plea. Here, of course, the defendant neither pleaded guilty nor is seeking to undo his stipulated trial. But even in the context of a plea, a defendant seeking to withdraw a guilty plea must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A general claim of innocence is insufficient to establish such a reason. See *United States v. Curry*, 494 F.3d 1124, 1129 (D.C. Cir. 2007) ("Although Curry did 'assert[] his innocence to the charges' in his motion to withdraw the plea before the district court . . . that kind of 'general denial' is not sufficient to satisfy the first factor."); *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995) ("A defendant . . . must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent[.]"). And a motion to withdraw a guilty plea "'that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.'" *United States v.*

*Jones*, 642 F.3d 1151, 1158 (D.C. Cir. 2011) (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006)).

Here, regardless of the defendant's "feel[ing]" about whether he "did what the charge is," he admitted his factual and legal guilt under oath, during a comprehensive colloquy with the court in which he admitted that the government could prove beyond a reasonable doubt the facts establishing the defendant's guilt. The fact that the defendant "wouldn't change anything [he] did" warrants a stiffer sentence, not vacatur of his convictions. Indeed, the government is unaware of any legal basis for the court *sua sponte* to vacate convictions entered after a stipulated trial, and there may be double-jeopardy issues were the Court to do so. *See* Fed. R. Crim. P. 33, advisory notes on 1966 amendments. The Court should thus discharge the show cause order and proceed to sentencing as scheduled.

WHEREFORE, the government respectfully requests that the Court proceed to sentencing on June 16, 2023, as originally ordered.

Respectfully submitted,

FOR THE UNITED STATES
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ James D. Peterson*
James D. Peterson
Special Assistant United States Attorney
Bar No. VA 35373
United States Department of Justice
1331 F Street N.W. 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
Mobile: (202) 230-0693
James.d.peterson@usdoj.gov

*/s/ Carolina Nevin*
Carolina Nevin
Assistant United States Attorney
NY Bar No. 5226121
U.S. Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
202-803-1612
Email: carolina.nevin@usdoj.gov