UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS B. ADAMS, JR.,<br><br>Defendant. | Case No. 21-cr-354-APM |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF RESENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in connection in support of its recommendation that defendant Thomas Adams be resentenced to 12 months of imprisonment, the statutory maximum, 12 months of supervised release, $500 in restitution, and a mandatory special assessment of $25 on his conviction on Count Two, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). [1]

**I.    INTRODUCTION**

The defendant, Thomas B. Adams, Jr., participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[2]

---

[1] Count Two of the indictment identifies the charge of 18 U.S.C. §1752(a)(1) and lists its elements, but incorrectly identifies it as "Disorderly and Disruptive Conduct in a Restricted Building or Grounds," instead of "Entering and Remaining in a Restricted Building or Grounds."

[2] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

1

Adams was one of the first rioters to enter the Capitol through the Parliamentarian Door. After entering, Adams ignored and pushed past a line of U.S. Capitol Police just beyond the Parliamentarian Door at the North Door Appointment Desk who were attempting to stop the rioters. Once Adams moved past the line of officers, he made his way into the Senate Chamber where the Certification of the Electoral College vote was supposed to take place. Adams entered the Senate well, taking pictures with his cellphone while he and several other rioters walked among the Senators' desks. Adams did not leave until he was forced out by Capitol Police, having been illegally inside the Capitol building for approximately 23 minutes.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021, Attack on the Capitol

The government refers the Court to the Statement of Facts for Stipulated Trial filed in this case, ECF No. 49, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020, presidential election.

### B.     Adams' Role in the January 6, 2021, Attack on the Capitol

The government refers the Court to its Sentencing Memorandum for a detailed description of Adams' role in the January 6 attack on the Capitol. ECF No. 67 at 3-12.

## III.    PROCEDURAL HISTORY

On May 12, 2021, a federal grand jury returned an indictment charging Adams with the

---

Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

2

following five counts: 18 U.S.C. §§ 1512(c)(2) and 2, 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G).

On January 30, 2023, as the result of a trial on stipulated facts, this Court convicted Adams of Count One, Obstruction of an Official Proceeding, in violation of 18 U.S.C § 1512(c)(2), and Count Two, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1).

On June 16, 2023, this Court sentenced Adams to 14 months of incarceration and 36 months of supervised release on Count One, and 12 months of incarceration and 12 months of supervised release on Count Two. The terms of incarceration and supervised release were to run concurrently. Adams began serving his sentence on August 5, 2023. On December 29, 2023, Adams moved for release pending appeal after the Supreme Court granted certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). ECF No. 82. This Court granted the motion and released Adams pending appeal on January 10, 2024. ECF No. 85. As a result, Adams has served slightly more than five months of his sentence.

On June 28, 2024, the Supreme Court decided *Fischer*, holding that § 1512(c)(2) requires proof that the defendant impaired or attempted to impair "the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding," and remanded the case to this Court for further proceedings. *Fischer v. United States*, 144 S. Ct. 2176, 2190 (2024).

After careful consideration of the Supreme Court's decision in *Fischer*, the government decided to not defend Adams' § 1512(c)(2) conviction on appeal, nor would it pursue or otherwise defend that charge on remand. The government and Adams agreed that the D.C. Circuit Court

should vacate Adams' conviction and sentence on Count One for violating 18 U.S.C. § 1512(c)(2) and remand to the district court for further proceedings. The D.C. Circuit did so on September 9, 2024. ECF No. 94. On remand to this Court, the government will move to dismiss Count One of the indictment.

Adams now faces resentencing on Count Two, 18 U.S.C. §1752(a)(1), Entering and Remaining in a Restricted Building or Grounds.

## IV.     STATUTORY PENALTIES

As noted by the Presentence Report issued by the U.S. Probation Office (ECF No. 64), Adams faces a term of imprisonment of not more than one year, a term of supervised release of not more than one year, a fine up to $100,000, and a mandatory special assessment of $25 on his conviction on Count Two, 18 U.S.C. § 1752(a)(1).

## V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). The government's Guidelines analysis is as follows:

**Count Two: 18 U.S.C. § 1752(a)(1) —Entering and Remaining in a Restricted Building**

| Base offense level: | 4 | U.S.S.G. § 2B2.3(a) |
|---|---|---|
| Specific Offense Characteristic | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." <br><br> On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Total | 6 | |

### A. Acceptance of Responsibility

Although Adams proceeded by way of a trial on stipulated facts, admitting his criminal conduct, this Court found Adams was not entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3C1.1. *See* Sent. Tr. 6/16/23 at 36:6-25 to 37:1-2. That finding was based on Adams' interview with a local newspaper on February 1, 2023, two days after the stipulated trial, in which he stated, "I wouldn't change anything I did…I didn't do anything. I still to this day, even though I had to admit guilt (in the stipulation), don't feel like I did what the charge is."[3] *See id.* at 34:9-20. At sentencing, the Court focused on Adams' lack of acceptance of responsibility, questioning whether the defendant truly appreciated the gravity of his crimes. Specifically, the Court stated that Adams' statements "reflect a general attitude of an unwillingness to accept responsibility for the criminal nature of his conduct." *Id.* at 34:3-8. The Court found that to grant Adams an acceptance of responsibility reduction would "reflect[] a disrespect for the process, [and suggest] that this really is not something anybody should be taking seriously." *Id.* at 36:10-12.

The government submits that the Court's prior ruling remains correct, and Adams is not entitled to a reduction under U.S.S.G. § 3C1.1.

### B. Criminal History Category

At the time of Adams' sentencing, the U.S. Probation Office calculated Adams' criminal history as Category III. PSR ¶ 69. The Court correctly anticipated that the Sentencing Commission would adopt an amendment revising the Commentary to § 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)) to include sentences resulting from possession

---

[3] www.sj-r.com/story/news/crime/2023/02/01/thomas-b-adams-jr-was-convicted-for-breaching-u-scapitol-on-jan-6/69863729007/

of marijuana offenses as an example of when a downward departure from the defendant's criminal history may be warranted. Specifically, Application Note 3(A)(ii) now provides, as an example, that a downward departure may be warranted if the defendant received criminal history points from a sentence for possession of marijuana for personal use, without an intent to sell or distribute it to another person. Because Adams received two criminal history points for such offenses, from convictions in 2012 and 2014, the Court applied a downward departure and treated Adams as a Category II offender. Sent. Tr. 6/16/23 at 38:1-14.

### C. Estimated Guidelines Range

With a total offense level of 6, and criminal history Category II, Adams' Guidelines imprisonment range is 1 to 7 months of imprisonment.

### D. Departures or Variances

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because Adams' Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range.

Adams was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. his offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, [Defendant] "endanger[ed] our democratic processes and

temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent. Tr. 9/22/22 at 86-87.

But nothing in Adams' Guidelines calculation reflects these facts. Adams would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[4] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. Therefore, a sentence within the defendant's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that

---

[4] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, -- S.Ct. -- (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

7

nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[5] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected."

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr. at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime.

- "January 6th wasn't an ordinary violent riot but one that interfered with the counting of electoral votes and the peaceful transition of power, which is one of the bedrocks of our democracy." *United States v. Perkins*, 21-CR-147-CJN, Sent. Tr. at 53.

- "But what a dangerous precedent the attack on January 6 set. What a Pandora's Box

---

[5] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

>it opened. We still don't [know] how corrosive it will prove to be to our constitutional order, at least until we have reestablished the practice of a peaceful transfer of power. *United States v. Sparks*, 21-CR-87-TJK, Sent. Tr. at 94.

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

And several judges of this Court have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38-BAH, Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

Recently, in *United States v. Sparks*, 21-CR-87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory guideline range of 15-21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct

9

still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posted a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr. at 87-88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr. at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under

U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

And in *United States v. Dunfee*, 23-CR-36-RBW, Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36-RBW, ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Because the seriousness of defendant's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendant's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of

[defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF No. 507, at 4-5 (cleaned up). Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sent. Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF No.151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

In past sentencings, this court has made clear its view that one of the "enduring legacies of January 6th" was "the effect it has had on our democracy and our politics and our elections. I daresay we all now hold our collective breaths every time an election is approaching. Will we have another January 6th again? That remains to be seen." *United States v. Rhodes*, 22-CR-15-1-APM, Sent. Tr. 5/25/23 at 114:19-24. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[6]

---

[6] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

12

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated." *United States v. Cleveland*, 21-CR-159-ABJ, Sent. Tr. at 94-95. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

In addition to departing upwards, other courts have varied upward from the advisory guideline range specifically because of the unique and serious nature of the crimes committed that day; this Court should do no less. *See United States v. Reffitt,* 21-CR-32-DLF, Mem. Op. and Order 4/10/24 at 10-11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638-TJK, Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding itself"); *United States v. Secor*, 21-CR-157-TNM, Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37-TNM, Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[7]

---

[7] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an

In this case, the government submits that an upward variance of 5 months is warranted to reach an appropriate sentence.

## VI. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described in the government's original sentencing memorandum, ECF No. 67 at 15-25, on balance, the Section 3553(a) factors weigh in favor of the government's recommended sentence.

The government continues to believe that the comparison cases referenced in its original sentencing memorandum, *id.* at 20-25, are relevant, despite the change in law announced in *Fischer*. Though the standards for a §1512(c)(2) conviction have changed, the underlying criminal conduct has not.

## VII. RESTITUTION

For the reasons set forth in its initial sentencing memorandum, ECF No. 67, the Court should require Adams to pay $500 in restitution for his conviction on Count Two. This amount fairly reflects Adams' role in the offense and the damages resulting from his conduct. Moreover, in cases where the parties have entered into a guilty plea agreement, five hundred dollars has

---

alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

consistently been the agreed upon amount of restitution and the amount of restitution imposed by judges of this Court where the defendant was convicted of only misdemeanors and not directly and personally involved in damaging property. Accordingly, such a restitution order avoids sentencing disparity.

## VIII. FINE

Adams' conviction for violation of 18 U.S.C. § 1752(a)(1) subject him to a statutory maximum fine of $100,000. *See* 18 U.S.C. § 3571(b). The guidelines fine range here, for offense level 6, is $1,000 to $9,500. U.S.S.G. § 5E1.2(c). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the PSR concludes that Adams does not have the ability to pay both restitution and a fine. PSR ¶ 124.

## IX.     CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence 12 months of imprisonment, the statutory maximum, 12 months of supervised release, $500 in restitution, and a mandatory special assessment of $25.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:     */s/ Carolina Nevin*
       CAROLINA NEVIN
       Assistant United States Attorney
       601 D Street NW
       Washington, D.C. 20530
       NY Bar No. 5226121
       (202) 803-1612
       carolina.nevin@usdoj.gov